FILED

2011 JAN 27 P 2: 18

RICHARD W. WIEKING
CLERK, US DISTRICT COURT
N.D. CAL SAN JOSE

ADR

E-filing

ORIGINAL



1  **MILBERG LLP**
JEFF S. WESTERMAN (SBN 94559)
2  jwesterman@milberg.com
SABRINA S. KIM (SBN 186242)
3  skim@milberg.com
One California Plaza
4  300 S. Grand Avenue, Suite 3900
Los Angeles, California 90071
5  Telephone: (213) 617-1200
Facsimile: (213) 617-1975
6
7  *Attorneys for Plaintiff*
8  [Additional Counsel Listed on Signature Page]

9                  UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11  ANTHONY CHIU, individually and on          **CASE NO. CV 11-00407**
behalf of all others similarly situated,
12                                                          **CLASS ACTION**
                  Plaintiff,
13                                                          COMPLAINT FOR:
        v.
14                                                          1.   Violations of the Stored
APPLE, INC., a California Corporation, and        Communications Act, 18 U.S.C. §
15  DOES 1 to 50 inclusive,                              2701 *et seq.*;

16                  Defendants.                            2.   Conversion;

17                                                          3.   Unjust Enrichment;

                                                           4.   Violation of California Business and
18                                                              Professions Code § 17500 *et seq.*;

19                                                          5.   Violation of California Business and
                                                               Professions Code § 17200 *et seq.*;
20
                                                           6.   Violation of the Consumer Legal
21                                                             Remedies Act, California Civil Code
                                                               § 1750;
22
                                                           7.   Breach of Contract;
23
                                                           8.   Breach of Implied Covenant of Good
24                                                             Faith and Fair Dealing;

25                                                          9.   Common Law Invasion of Privacy; and

26                                                          10.  Violation of Article I, Section 1 of the
                                                               California Constitution.
27
                                                           **JURY TRIAL DEMANDED**
28

| CLASS ACTION COMPLAINT | - | |
| --- | --- | --- |

1    Plaintiff Anthony Chiu ("Plaintiff" or "Mr. Chiu") brings this action individually and on

2  behalf of a class of owners and users of mobile devices that run on Apple's iPhone operating

3  system ("iOS"), including the Apple iPhone, iPad, and/or iPod Touch (collectively referred to as

4  the "mobile devices" or "Apple mobile devices") who downloaded and used one or more

5  "applications," as that term is defined herein, on their Apple mobile devices.

6    This case arises from Defendant Apple's intentional and knowing transmission of data to

7  third parties that is used to identify Apple mobile device users and associate them with records

8  revealing the most intimate details of their lives, as reflected in their application usage and

9  activity, Internet browsing history and other personal data. This is done, without users' consent

10  or knowledge, in violation of federal and state laws, and in breach of Apple's purported

11  agreements with mobile device users.  Plaintiff and the class seek damages and equitable relief.

12    Plaintiff alleges the following upon personal knowledge as to his own acts, and upon

13  information and belief based on the investigation conducted by Plaintiff's counsel as to all other

14  matters.

15                                      **PARTIES**

16    1.    Plaintiff Anthony Chiu is an individual who resides in Alameda, California.  Mr.

17  Chiu is an owner and user of Apple's iPhone who downloaded applications to his iPhone and

18  used them.  The applications include: 360 App, camera+, soundhound, pageonce, trip tracker,

19  good guide, irecycle, iscopes, itriage, redlaser, key ring, repair pal, flixster, fandango, tv guide,

20  Netflix, stub hub, redbox, fring, whatsapp, pandora, hulu, dictionary.com, npr, poynt, point

21  inside, urbanspoon, kayak, taxi magic, and iheart radio.

22    2.    Defendant Apple, Inc. ("Apple") is a California corporation that is known

23  worldwide as an icon of personal computing.  Apple has its principal place of business in this

24  District at 1 Infinite Loop, Cupertino, California 95014.  Apple designs, manufactures and

25  markets, among other products, the iPhone, iPad, and iPod Touch, each of which runs on Apple's

26  iOS. Apple also designs and manufactures a range of accessory, service and support offerings to

27  support the mobile devices, including its MobileMe subscription-based collection of online

28  services and software that automatically "pushes" or syncs new email, contacts, and calendar

| CLASS ACTION COMPLAINT | - 1 - | |

1  events to the subscribers' iOS devices, Mac, and/or PC so that the devices "always stay in perfect
2  sync." Apple conducts business throughout California and the United States.

3        3.        The true names and capacities, whether individual, corporate, associate or
4  otherwise, of each of the Defendants designated as a DOE are unknown to Plaintiff at this time
5  and therefore Plaintiff sues Defendants by such fictitious names, pursuant to California Civil
6  Code § 474. Plaintiff will ask leave of the Court to amend this Complaint to show the true
7  names and capacities of the DOE Defendants when that information is ascertained. Plaintiff is
8  informed and believes, and thereon alleges that each of the Defendants designated herein as a
9  DOE is legally responsible in some manner, for the performance of the acts and omissions
10 described below, and is liable for the events and happenings alleged and, in such manner,
11 proximately caused harm to Plaintiff as further alleged.

12       4.        Defendant Apple, and the DOE Defendants, and each of them, are individually
13 sued as participants, co-conspirators, and aiders and abettors in the improper acts, plans,
14 schemes, and transactions that are the subject of this Complaint.

15                               **JURISDICTION AND VENUE**

16       5.        This Court has subject matter jurisdiction pursuant to the Class Action Fairness
17 Act of 2005, 28 U.S.C. § 1332 (a) and 1332 (d), because the amount in controversy exceeds
18 $5,000,000.00 exclusive of interests and costs, and more than two-thirds of the members of the
19 Class are citizens of states different from that of Defendant. This Court also has federal question
20 jurisdiction as this Complaint alleges violations of the Stored Communications Act, 18 U.S.C.
21 § 2701 *et seq.*, (the "SCA").

22       6.        Venue for this action properly lies in this District pursuant to 28 U.S.C. § 1391 as
23 Defendant Apple's principal executive office and headquarters are located in California.

24                                **FACTUAL ALLEGATIONS**

25 **APPLE MOBILE DEVICES AND APPS**

26       7.        On January 9, 2007, Apple entered the cellular telephone market with the
27 introduction of its now-iconic and ubiquitous iPhone. Possessing many of the capabilities of an
28 internet-connected laptop computer in a sleek, compact device, the iPhone quickly became one

---

CLASS ACTION COMPLAINT                        - 2 -

1 | of the most popular and influential devices in the smartphone market; Apple sold more than 59
2 | million iPhones in fewer than four years. Apple has since expanded its product line to include the
3 | iPod Touch and the iPad, both of which run the same iOS software and share many of the same
4 | hardware features as the iPhone.

5 |        8.     Apple offers apps for its mobile devices on an Apple-sponsored website, known
6 | as the "App Store," which was launched on July 10, 2008. The App Store is linked to Apple's
7 | iTunes application.  An application or "app" is a software program that runs on a computer or
8 | mobile device.  iTunes is Apple's proprietary digital media player application, designated by
9 | Apple for playing and organizing Apple's digital music and video files, and is also an interface
10 | to manage the contents on Apple's iOS products.  Apple advertises the App Store as "the
11 | ultimate source for mobile apps — 300,000 and counting in practically every category." As of
12 | January 22, 2011, Apple announced *via* its "10 Billion App Countdown" that the App Store had
13 | over 10 billion downloads.  *See* Apple Inc., http://www.apple.com/itunes/10-billion-app-
14 | countdown/ (last visited Jan. 22, 2011).

15 |        9.     Some apps, such as "Safari" and "Maps," are offered directly by Apple. Others
16 | are offered by third-party app developers who have contracted with Apple to sell their apps *via*
17 | the App Store for use on Apple's mobile devices. Apple generally takes 30% of revenues from
18 | the app sales, while the remaining 70% goes to the seller or owner of the app.

19 | **UDIDs AND OTHER PERSONAL DATA**

20 |       10.    Apple equips each mobile device with a unique, application-visible serial number
21 | called a Unique Device Identifier ("UDID").  Apple allows the UDID to be displayed to
22 | application developers, and allows the downloaded applications access to the user's browsing
23 | history each time the user clicks on an advertisement or application appearing on their mobile
24 | device. There is no way to block the visibility of the UDID to any installed applications, nor is
25 | there any mechanism to prevent the transmission of the UDID, and other information obtained
26 | from the mobile device, to third parties in the current version of Apple's operating system. The
27 | commercial collection of data from the mobile devices through invisible and intrusive techniques
28 | has become big business at the expense of the users' privacy as the application developers use

CLASS ACTION COMPLAINT | - 3 -

1 │ the UDID themselves, and/or sell them to tracking companies as they would any other
2 │ commodity.

3 │      11.    Consequently, anyone who has used a mobile device to browse the Internet to
4 │ obtain advice about hemorrhoids, sexually transmitted disease, abortion, drug rehabilitation, or
5 │ care for elderly; to search for jobs, seek out new romantic partners, engage in political activity; in
6 │ fact, to do more or less anything; can be reasonably sure that the browsing history created by
7 │ such investigation has been incorporated into a detailed dossier for sale to marketers.

8 │      12.    The spying on mobile device users by observing and remembering the user's
9 │ clicks, combining it with the user's UDID, and building and selling detailed profiles of the
10 │ identified user's online activities and interests, allows the online marketers chilling access to the
11 │ most intimate details of the user's life, in order to exploit this otherwise private information to
12 │ commercial advantage. One data aggregator, Audience Science, states that its work involves
13 │ "recording billions of behavioral events daily and reaching over 385 million unique Internet
14 │ users" and then making such data available to its clients: "web publishers, marketers, networks,
15 │ exchanges, and agencies[,] to create intelligent audience segments to connect people with
16 │ relevant advertising driving the transition to data-driven audience marketing online." *See*
17 │ MediaPost, http://mediapost.com/events/?/showID/OMMAGlobalNewYork.09.NewYorkCity/
18 │ type/Exhibitor/itemID/647/OMMAGlobalNewYork-Exhibitors%20and%20Sponsors.html (last
19 │ visited Jan. 24, 2011).

20 │      13.    On December 17, 2010, the *Wall Street Journal* published an article entitled,
21 │ *"Your Apps Are Watching You"* that detailed the effect of Apple's blanket disclosure of its
22 │ mobile device users' UDIDs, combined with the release of other personal information such as
23 │ user name and password, contacts (collected from the phone's address book, which contains
24 │ names, users' phone numbers and email addresses, as well as a "notes field," in which many
25 │ users store sensitive data such as door security codes or bank accounts), age and gender, phone
26 │ numbers, current location, and in some cases, even the owner's real name, obtained from the
27 │
28 │

| CLASS ACTION COMPLAINT | - 4 - | |
|---|---|---|

1 | mobile device. [1]  The *Wall Street Journal* investigated the transmissions of 101 popular mobile

2 | device apps—games and other software applications for iPhone and Android phones— and

3 | concluded that 56 out of the 101, or over half, transmitted the UDID that had been wrongfully

4 | disclosed to other companies without the users' awareness or consent.  The article cited multiple

5 | marketers that touted the high market value of this information in targeting consumers based on

6 | the data mined from their iOS mobile device giving credence to the statement, "the more

7 | information that is known about a consumer, the more a company will pay to deliver a precisely-

8 | targeted advertisement to him." Federal Trade Commission Preliminary Staff Report, *Protecting*

9 | *Consumer Privacy in an Era of Rapid Change,* (Dec. 2010) at 24 ("FTC Report").

10 |     14.    Eric Smith, Director of Information Security and Networking at Bucknell

11 | University, published a research paper on October 1, 2010, entitled, *"iPhone Applications &*

12 | *Privacy Issues: An Analysis of Application Transmission of iPhone Unique Device Identifiers*

13 | *(UDIDs),"* in which he presented the results of his investigation into Apple's disclosure of

14 | UDIDs and other personal information from the users' mobile devices, and the consequent

15 | collection and dissemination of such personal information (where and how the personal

16 | information is being shared, with whom, and how it is being used).[2]  Smith found that a

17 | substantial number of applications collect both the phone's UDID and some form of user login

18 | data which ties to a stored user account, and that 68% of the evaluated apps silently transmitted

19 | the UDID back to a remote server owned either by the app developer or an advertising partner.

20 | Such entities inherently have the ability to tie a UDID to a real-world identity, and combined

21 | with other widespread data collection of information mined from the mobile devices, can lead to

22 | effective real-time user tracking of location and activity.  Such data collection can also open the

23 | door to specific harms associated with the misuse of the user's personal data, such as economic

24 | injury resulting from identity theft; unwanted commercial intrusions into their daily lives by

25 |

26 | [1] *Available at* http://online.wsj.com/article/SB1000142405274870469400457600200 83703574602.html?mod=what_they_know (last visited 1/20/11).

27 | [2] *Available at* http://www.pskl.us/wp/wp-content/uploads/2010/09/iPhone-Applications-Privacy-

28 | Issues.pdf

CLASS ACTION COMPLAINT           - 5 -

1  unwanted solicitations; unwanted exposure of sensitive data relating to the personal health or
2  financial condition of the user which could lead to reputational harm, including the fear of being
3  monitored or simply having private information made public; or actual physical harm, and even
4  risks to physical security.  In plain English: an advertiser can know, in real-world terms, exactly
5  what a particular mobile device was used to search for on a given day, where the search was
6  conducted from, and, assuming that the mobile device was used by its owner, the advertiser
7  would know the identity of the person. Few, if any, consumers would knowingly consent to such
8  exposure, and even the government would not have such unlimited access to personal
9  information unless it first obtained a warrant.

10      15.     By collecting personal information from the mobile devices "[w]ebsites and stores
11  can, therefore, easily buy and sell information on visitors with the intention of merging
12  behavioral with demographic and geographic data in ways that will create social categories that
13  advertisers covet and target with ads tailored to them or people like them."  Joseph Turow,
14  Jennifer King, Chris Jay Hoofnagle, Amy Bleakley, and Michael Hennessy, *Americans Reject*
15  *Tailored Advertising and Three Activities that Enable It* (Sept. 29, 2009), *available at*
16  http://ssrn.com/abstract=1478214.

17      16.     As one researcher put it, "[a]n advertiser or other entity who wants to track user
18  behaviors and patterns online could not ask for a better identifier than one that is guaranteed by
19  the hardware manufacturer to be unique to a single device. Indeed, "[The UDID] is effectively a
20  'supercookie,' says Vishal Gurbuxani, co-founder of Mobclix Inc., an exchange for mobile
21  advertisers" *See* Scott Thurm & Yukari Iwatani Kane, *Your Apps Are Watching You*, Wall St. J.,
22  Dec. 17, 2010.[3]  A cookie is a device stored on a users' computer that enables the tracking of a
23  users' browsing history.  Another marketer stated:

24      'The great thing about mobile is you can't clear a UDID like you can a cookie,'
        says Meghan O'Holleran of Traffic Marketplace, an Internet ad network that is
25      expanding into mobile apps. 'That's how *we track everything*.' Ms. O'Holleran
        says Traffic Marketplace, a unit of Epic Media Group, monitors Smartphone users
26      whenever it can. '*We watch what apps you download, how frequently you use*

27

28  [3] *See supra* note 1.

1  *them, how much time you spend on them, how deep into the app you go,*' she
   says.

2  *Id.* [Emphasis added.]

3  

4  17. Among the companies receiving the personalized profiles is one owned by Apple

5  itself, Quattro Wireless, which uses the information to target advertisements through Apple's

6  lucrative iAd system. Apple boasts that "[w]ith iAd, you can now reach the Apple audience in

7  their favorite apps anytime, anywhere with unmatched impact and precision," and urges

8  marketers to:

9      Get Started Today

10     Learn how you can advertise on the iAd Network and *reach the most engaged
       audience in mobile.* Contact an iAd sales executive today.

11  

12  *See* Apple Inc., http://advertising.apple.com/developers/ (last visited Jan. 22, 2011). [Emphasis

13  added.]

14  **APPLE'S RELEASE OF ITS USERS' PERSONAL DATA VIOLATES ITS OWN PRIVACY POLICY**

15     18. Apple's privacy policy is opaque and confusing, but one thing is clear: it does not

16  inform mobile device users that by providing application developers with their UDID, Apple

17  enables them to put a name to highly personal and in many cases, embarrassing information,

18  derived from app downloading activity and usage, and Internet browsing history, that would

19  otherwise be anonymous. On the contrary, the Apple Privacy Policy contains a section entitled,

20  "How we use your personal information," and the enumeration of ways the information is being

21  used does not include giving third parties unfettered access to mobile device users' personally

22  identifiable information. Rather, the policy states that, "[p]ersonal information will *only* be

23  shared by Apple to provide or improve our products, services and advertising; *it will not be*

24  *shared* with third parties for their marketing purposes." (Emphasis added.)

25     19. Similarly, Apple spokesman Tom Neumayr states, "[Apple has] created strong

26  privacy protections for our customers, especially regarding location-based data. Privacy and

27  

28  

CLASS ACTION COMPLAINT                    - 7 -

1 trust are vitally important," *See* Scott Thurm & Yukari Iwanti Kane, *Your Apps Are Watching*
2 *You*, Wall St. J., Dec. 17, 2010.[4]

3   20. It is now widely accepted that such privacy policies are ineffective when it comes
4 to providing consumers with useful and accurate information about how their personal
5 information will be collected and used.  In a preliminary staff report prepared by the Federal
6 Trade Commission, entitled, *Protecting Consumer Privacy in an Era of Rapid Change*, the
7 Federal Trade Commission stated that, "[T]he notice-and-choice model, as implemented, has led
8 to long, incomprehensible privacy policies that consumers typically do not read, let alone
9 understand"  and that are wholly inadequate in an age in which companies "collect and use
10 consumers' information in ways that often are invisible to consumers." FTC Report at iii.  The
11 FTC also found that "privacy notices are often opaque, lack uniformity, and are too long and
12 difficult to navigate.  Too frequently they bury disclosures of important information. . . . A
13 particularly strong illustration of where privacy policies have been ineffective is in the mobile
14 context where, because of the small size of the device, a privacy notice can be spread out over
15 100 separate screens.  Indeed, it is difficult to imagine consumers scrolling through each screen
16 or making informed choices based on the information contained in them." *Id.* at 70.  *See also*,
17 Aleecia M. McDonald & Lorrie Faith Cranor, *The Cost of Reading Privacy Policies*, 4 I/S L.J. &
18 Pol'y for Info. Soc'y 543, 565 (2008) (estimating that it would take consumers hundreds of hours
19 to read the privacy policies they might typically encounter in one year on the Internet).

20   21. Research confirms that consumers almost never get past the first few sentences of
21 privacy policies or terms of service, if they read them at all, and that, moreover, when they see
22 the hyperlinked words "Privacy Policy" on a Web site, they assume that they mean that their
23 information is not being collected or shared, even if the policy says just the opposite. *See* Turow,
24 *supra* ¶ 15.  This is especially so when the first few sentences of the privacy policy evince
25 concern for maintaining the users privacy.  The take-it-or-leave-it Apple "privacy policy" ---
26 which would be more aptly named a "disclosure policy" --- is no exception. The first sentence:
27 _____
28 [4] *See supra* note 1.

CLASS ACTION COMPLAINT  - 8 -

1  "Your privacy policy is important to us." To the right of that sentence sits the "TRUSTe

2  Certified Privacy" logo --- a sure sign to most consumers that Apple is guarding their personal

3  information:

4

5  

6  Apple Inc. has been awarded TRUSTe's Privacy Seal signifying that this privacy

7  policy and practices have been reviewed by TRUSTe for compliance with
   TRUSTe's program requirements including transparency, accountability and choice

8  regarding the collection and use of your personal information. The TRUSTe
   program does not cover information that may be collected through downloadable

9  software. If you have questions or complaints regarding our privacy policy or
   practices, please contact us at privacy@apple.com. If you are not satisfied with

10 our response you can contact TRUSTe here.

11    22.    Moreover, Apple's "privacy policy" misleadingly states that, "[i]f we do combine

12 non-personal information with personal information the combined information will be treated as

13 personal information for as long as it remains combined."  This falsely suggests that Apple

14 protects the mobile device users' personal information from disclosure, when in fact it does not

15 and misleadingly suggests that personally identifiable information is substantively different from

16 non-personally identifiable information when in practice, this distinction is irrelevant to privacy

17 issues:

18    Data privacy historically has been thought of in terms of *personally identifying*

19 *information* (alternatively called *personally identifiable or individually*
   *identifiable* information or referred to simply as *PII*).  Attention had been focused

20 on personal data that could identify an individual person --- by data elements such
   as the person's name, postal address, email address, social security number or

21 driver's license number --- as opposed to aggregate data, which may be useful to
   companies but not reveal anything in particular about any individual user, or data

22 unique to a person that could distinguish that person from someone else, but not
   reveal a person's identity (such as cookie data that shows almost everything about

23 a user's use of a site except who that user is. . . .  The Federal Trade Commission
   noted in a 2009 report, however, that changes in data collection and use practices

24 and new technologies increasingly make the distinction between PII and non-PII
   less meaningful. . . .  As technologies improve, it is assumed that it will be easier

25 to actually identify a specific person based on data that to date has been
   considered non-PII or pseudonymous. . . .

26    Even where data itself is anonymous or pseudonymous, it can become identifiable

27 when combined and linked together. . . .  Thus, distinctions between PII and non-
   PII may not have any bearing on the particular privacy risks at issue. . . .  For all

28 these reasons, the FTC has suggested that, at least in the context of behavioral

advertising, the relevant criteria is *whether information reasonably could be associated with a particular consumer or device*, not whether it is PII or non-PII.

The increased use of third party cookies, the use of cookies for increasingly more sensitive data and the practice of some sites in combining information voluntarily obtained with data collected through cookies and other technical means have blurred the difference between personally identifying information and non-PII. Ian C. Ballon, *E-Commerce and Internet Law: Treatise With Forms*, 26.01 Data Privacy Law - In General, at pp. 26-7 - 26-9, and 26.03 Web Beacons, Cookies and Other Online Data Gathering Mechanisms, at pp. 26-20 - 26-21 (2d ed. West 2009).

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a Class defined as follows: All Apple customers who reside in the United States and who, any time after July 10, 2008, have downloaded and used an application on their iPhone, iPad and/or iPod Touch.

24.     Excluded from the Class are Defendants; any parent, subsidiary, or affiliate of Defendants or any employees, officers, or directors of Defendants; legal representatives, successors, or assigns of Defendants; and any justice, judge or magistrate judge of the United States who may hear the case, and all persons related to any such judicial officer, as defined in 28 U.S.C. § 455(b).

25.     **Numerosity**.  The Class members are so numerous and dispersed nationwide that joinder of all members is impracticable.  Upon information and belief, the Class members number in the hundreds of thousands, if not millions.  The exact number of Class members is unknown, but can be determined from Defendants' computerized and other records.  Plaintiff reasonably estimates and believes that there are thousands of persons in the Class.

26.     **Commonality**.  There are numerous and substantial questions of law and fact that are common to all members of the Class, which predominate over any question affecting only individual Class members.  The members of the Class were and continue to be subjected to the same practices of the Defendants.  The common questions and issues raised by Plaintiff's claims include:

(a)     whether Defendants shared Plaintiff's and the Class's personal information with third-party advertisers and online tracking companies;

1        (b)    whether Plaintiff consented to Defendants' sharing of Plaintiff's personal

2  information with third-party advertisers and online tracking companies;

3        (c)    whether Apple violated its own Terms and Privacy Policies by sharing of

4  Plaintiff's personal information with app developers, third-party advertisers, and online tracking

5  companies;

6        (d)    whether Defendants breached their contracts, and if so, the appropriate

7  measure of damages and remedies against Defendants for such breaches;

8        (e)    whether Defendants breached the covenants of good faith and fair dealing,

9  and if so, the appropriate measure of damages and remedies against Defendants for such breach;

10        (f)    whether Defendants have violated the SCA; California Business and

11  Professions Code § 17200 *et seq.*; California Business and Professions Code § 17500 *et seq.*;

12  Consumer Legal Remedies Act, California Civil Code § 1750; Article I, Section 1 of the

13  California Constitution; and other violations of common law;

14        (g)    whether Plaintiff and the Class have been damaged as a result of

15  Defendants' alleged violations as alleged herein; and, if so, the appropriate relief for Defendants'

16  violations; and

17        (h)    whether Defendants have been unjustly enriched as a result of its unlawful

18  conduct, and, if so, whether Defendants should disgorge inequitably obtained money that they

19  have been unjustly enriched by; and, the nature and extent of any other remedies, and injunctive

20  relief, to which Plaintiff and the Class are entitled.

21      27.    **Typicality**. Plaintiff's claims are typical of the claims of all of the other members

22  of the Class, because his claims are based on the same legal and remedial theories as the claims

23  of the Class and arise from the same course of conduct by Defendants.

24      28.    **Adequacy**.  Plaintiff will fairly and adequately protect the interests of all

25  members of the class in the prosecution of this Action and in the administration of all matters

26  relating to the claims stated herein.  Plaintiff is similarly situated with, and has suffered similar

27  injuries as, the members of the Class he seeks to represent.  Plaintiff has retained counsel

28

1    experienced in handling class action lawsuits.  Neither Plaintiff nor his counsel have any interest

2    that might cause them not to vigorously pursue this action.

3         29.    **Superiority**.  A class action is superior to other available methods for the fair and

4    efficient adjudication of the controversy, since individual joinder of the Class members is

5    impracticable.  Even if individual Class members were able to afford individual litigation, it

6    would be unduly burdensome to the Courts in which the individual litigation would proceed.

7    Defendants have subjected the Class to the same violations as referenced herein.  Accordingly,

8    class certification is appropriate under Rule 23 because common issues of law and fact regarding

9    Defendants' uniform violations predominate over individual issues, and class certification is a

10   superior method of resolving these claims.  No unusual difficulties are likely to be encountered

11   in the management of this action as a class action.  Defendants acted and continue to act in a

12   manner that is generally applicable to all members of the Class, making final injunctive relief

13   appropriate.

## FIRST CAUSE OF ACTION
### (Stored Communications Act, 18 U.S.C. § 2701 *et seq.*)

16        30.    Plaintiff hereby incorporates by reference the allegations contained in all of the

17   preceding paragraphs of this complaint.

18        31.    Defendants provide electronic communication services to the public *via* their

19   Apple mobile devices and/or apps.  18 U.S.C. § 2510(15).

20        32.    Defendants provide remote computing service to the public because they provide

21   computer storage and processing services by means of an electronic communications system.  18

22   U.S.C. § 2711(2).

23        33.    Defendants carry and maintain their users' UDIDs solely for the purpose of

24   providing storage and computer processing services to its users.  Defendants are not authorized

25   to access this information for purposes other than providing storage and computer processing.

26   18 U.S.C. § 2702(a)(2).

27        34.    Mobile device users' UDID and personal information as stored by Defendants are

28   electronic communications within the meaning of 18 U.S.C. § 2510 (12).

| CLASS ACTION COMPLAINT | - 12 - | |

35.   Defendants hold their users' UDID and personal information in electronic storage within the meaning of 18 U.S.C. § 2510(17).

36.   In relevant part, 18 U.S.C. § 2701(a)(1)-(2) of the SCA provide that an offense is committed by anyone who: "(1) intentionally accesses without authorization a facility through which electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains . . . [an] electronic communication while it is in electronic storage in such system."

37.   Defendants intentionally exceeded their authorization to access and control confidential and private information relating to Plaintiff's and the Class's electronic communications in violation of 18 U.S.C. § 2701 *et seq.* of the SCA.

38.   In relevant part, 18 U.S.C. § 2702(a)(1)-(2) of the SCA provides that a person or entity shall not: "(1) . . . knowingly divulge to any person or entity the contents of a communication . . . ; and (2) . . . shall not knowingly divulge to any person or entity the contents of any communication . . . ."

39.   Section 2707 of the SCA provides for a civil cause of action and allows for damages, and declaratory and equitable relief.

40.   Defendants knowingly, willfully, unlawfully, and intentionally without authorization divulged confidential and private information relating to Plaintiff's electronic communications in violation of 18 U.S.C. § 2701 *et seq.* of the SCA.

41.   Defendants engage in the foregoing acts without obtaining the lawful consent of the user. 18 U.S.C. § 2702(b)(3).

42.   By engaging in the foregoing acts, Defendants knowingly divulge the contents of communication carried and maintained by Defendants on behalf of and received by transmissions from their users in violation of 18 U.S.C. § 2702(a)(2). Plaintiff and the Class are entitled to statutory damages of no less than $1,000.00 (one thousand dollars) per violation. Because Defendants' violations were willful and intentional, Plaintiff and the Class are entitled to recover punitive damages as provided by 18 U.S.C. § 2702(c).

## SECOND CAUSE OF ACTION
### (Conversion)

43.     Plaintiff hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

44.     Plaintiff's personally identifiable information – including full name, email address, mailing address, telephone number, and credit card number – is valuable property owned by Plaintiff.

45.     Defendants unlawfully exercised dominion over said property and thereby converted Plaintiff's and the Class members' respective personal information by providing it to third parties in violation of the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, and in violation of its contracts with Plaintiff and the respective class members.

46.     Plaintiff and the Class were damaged thereby.

## THIRD CAUSE OF ACTION
### (Unjust Enrichment)

47.     Plaintiff hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

48.     By engaging in the conduct described in this Complaint, Defendants have knowingly obtained benefits from Plaintiff under circumstances that make it inequitable and unjust for Defendants to retain them.

49.     Defendants have received a benefit from Plaintiff and Defendants have received and retained money from advertisers and other third parties as a result of sharing the personal information of Defendants' users' with those advertisers without Plaintiff's knowledge or consent as alleged in this Complaint.

50.     Plaintiff did not expect that Defendants would seek to gain commercial advantage from third parties by using his personal information without his consent.

51.     Defendants knowingly used Plaintiff's personal information without his knowledge or consent to gain commercial advantage from third parties and had full knowledge of the benefits they have received from Plaintiff.  If Plaintiff had known Defendants were not

1   keeping his personal information from third parties, he would not have consented and

2   Defendants would not have gained commercial advantage from third parties.

3          52.   Defendants will be unjustly enriched if Defendants are permitted to retain the

4   money paid to them by third parties, or resulting from the commercial advantage they gained, in

5   exchange for Plaintiff's personal information.

6          53.   Defendants should be required to provide restitution of all money obtained from

7   their unlawful conduct.

8          54.   Plaintiff and the Members of the Class are entitled to an award of compensatory

9   and punitive damages in an amount to be determined at trial or to the imposition of a

10  constructive trust upon the wrongful revenues and/or profits obtained by and benefits conferred

11  upon Defendants as a result of the wrongful actions as alleged in this complaint.

12         55.   Plaintiff and the Class have no remedy at law to prevent Defendants from

13  continuing the inequitable conduct alleged in this complaint and the continued unjust retention of

14  the money Defendants received from third-party advertisers.

15                         **FOURTH CAUSE OF ACTION**
          **(Violation Of California Business and Professions Code § 17500, *et seq.***
16                        **Untrue and Misleading Statements)**

17         56.   Plaintiff hereby incorporates by reference the allegations contained in all of the

18  preceding paragraphs of this Complaint.

19         57.   Plaintiff asserts this cause of action against Defendants for violations of

20  California Business and Professions Code § 17500 *et seq.* for untrue and misleading statements.

21         58.   At all relevant times, Defendants engaged in a scheme of offering its Apple

22  mobile device and app services to Plaintiff by way of, *inter alia*, commercial marketing and

23  advertising, the World Wide Web (Internet), product packaging and labeling, and other

24  promotional materials.  These materials misrepresented and/or omitted the truth about the extent

25  to which Defendants would share valuable personal information with third parties.  Defendants

26  knew, or should have known, that these statements were deceptive, misleading, or untrue.

27         59.   Said advertisements and inducements were made within the State of California

28  and come within the definition of advertising as contained in Business and Professions Code

CLASS ACTION COMPLAINT                    - 15 -

§ 17500 *et seq.* in that such promotional materials were intended as inducements to purchase and use products and services offered by Defendants and are statements disseminated by Defendants to Plaintiff and were intended to reach Plaintiff. Defendants knew, or should have known, that these statements were misleading and deceptive.

60. In furtherance of said plan and scheme, Defendants have prepared and distributed within the State of California *via* commercial marketing and advertising, the World Wide Web (Internet), product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represent the truth about personal information that Apple mobile device and app users entrust to Defendants.

61. Consumers, including Plaintiff, were among the intended targets of such representations.

62. The above acts of Defendants, in disseminating said misleading and deceptive statements throughout the State of California to consumers, including Plaintiff, were and are likely to deceive reasonable consumers, including Plaintiff, by obfuscating the truth about Defendants' use of their personal information.

63. As a result of the above violations, Plaintiff has suffered injury in fact and lost money or property. Plaintiff and the Members of the Class, pursuant to Business and Professions Code § 17535, are entitled to an order of this Court enjoining such future conduct on the part of Defendants, and such other orders and judgments that may be necessary to return Defendants' ill-gotten gains and restore to any person in interest any money paid for Defendants' services as a result of the wrongful conduct of Defendants.

## FIFTH CAUSE OF ACTION
### (Violation Of California Business And Professions Code § 17200 *et seq.* Unfair Competition)

64. Plaintiff hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

65.    At all relevant times, Defendants engaged, and continue to engage, in unfair, unlawful, and fraudulent business practices in California by engaging in the misconduct detailed above.

66.    Defendants misled consumers by continuously and falsely representing during the Class Period that they would not make personally identifiable information available to third parties without the consent of Plaintiff when in fact it secretly provided such information to third parties as alleged herein.

67.    Defendants engaged in these unfair and fraudulent practices to increase their profits.  The business practices alleged above are unlawful under § 17200 *et seq.* because they violate § 17500 *et seq.*, the Stored Communications Act, and the California Consumer Legal Remedies Act, among others.

68.    Had Plaintiff known that Defendants would share his personally identifiable information with third parties, he would not have purchased or used to Defendants' services, which in turn, forced him to relinquish, for free, valuable personal information.  As a result of Defendants' acts of unfair competiton, Plaintiff and the Members of the Class have suffered, and continues to suffer, injury in fact and have lost money and/or property as a result of such fraudulent, unfair, and/or unlawful business practices, in an amount that will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

69.    The aforementioned practices that Defendants have used, and continue to use to their significant gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors, as well as injury to Plaintiff.

70.    Plaintiff seeks full restitution and disgorgement of money, as necessary and according to proof, to restore to Plaintiff the value of all personal information that Defendants unlawfully converted by means of the unfair and/or fraudulent business practices complained of herein, plus interest thereon.

71.    Plaintiff seeks an injunction to prohibit Defendants from continuing to engage in the unfair trade practices complained of herein.  Cal. Bus. & Prof. Code § 17203.  The acts complained of herein occurred, at least in part, within the Class Period.

72.     Plaintiff is further entitled to and does seek both a declaration that the above-described business practices are unfair, unlawful, and/or fraudulent, and injunctive relief restraining Defendants from engaging in any of such practices in the future.  Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property because Defendants will continue to violate the law, unless specifically ordered to comply with the same.  This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recoup monies paid to Defendants to which Defendants are not entitled.

## SIXTH CAUSE OF ACTION
**(Violation of the California Consumer Legal Remedies Act – Cal. Civ. Code § 1750 *et seq.* – Injunctive Relief Only)**

73.     Plaintiff hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

74.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (the "CLRA").  This cause of action does not seek monetary damages at this point, but is limited solely to injunctive relief.  Plaintiff will amend this Class Action Complaint to seek damages in accordance with the CLRA after providing the Defendants with notice pursuant to California Civil Code § 1782.

75.     Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or that have resulted, in the sale or lease of goods or services to consumers.

76.     Plaintiff is a "consumer" as that term is defined by the CLRA in California Civil Code § 1761(d).

77.     Defendants provided "services" to Plaintiff within the meaning of California Civil Code § 1761(b).

78.     By engaging in the actions, misrepresentations, and misconduct set forth in this Class Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(5) by misrepresenting that the service has particular uses, benefits, or quantities that they do not have.

79.    By engaging in the actions, misrepresentations, and misconduct set forth in this Complaint, Defendants violated, and continue to violate, § 1770(a)(7) by misrepresenting the service is of a particular standard, quality, or grade.

80.    By engaging in the actions, misrepresentations, and misconduct set forth in this complaint, Defendants violated, and continue to violate, § 1770(a)(9) by advertising services with intent not to sell them as advertised.

81.    By engaging in the actions, misrepresentations, and misconduct set forth in this complaint, Defendants violated, and continue to violate, § 1770(a)(16) by misrepresenting that a subject of a transaction has been supplied in accordance with a previous representation when they have not.

82.    Plaintiff requests that this Court enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to California Civil Code § 1780(a)(2).  If Defendants are not restrained from engaging in these types of practices in the future, Plaintiff and the Class will continue to suffer harm.

### SEVENTH CAUSE OF ACTION
#### (Breach of Contract)

83.    Plaintiff hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

84.    Plaintiff submits personal information to Apple and Apple promises that it will not share this information with third-party advertisers or applications developers without Plaintiff's consent, and the consent of each Class member, respectively.

85.    The Apple Privacy Policy states that Apple will not divulge personal information to outside advertising companies without the user's consent.  Despite this promise, Apple did in fact knowingly share users' personal information with outside advertisers and application developers in violation of its own Agreement with its users.

86.    Plaintiff never consented to the sharing of his personal information to third-party advertisers and/or application developers.

87.    Plaintiff has performed his obligations under the contract.

88.    Apple materially breached its contractual obligations through its conduct as alleged herein, including its transmission of Plaintiff's personal information to third-party advertisers and application developers, as well as Plaintiff's UDID without consent.

89.    Plaintiff and the Class have been damaged as a direct and proximate result of Apple's breach of their agreements with Plaintiff and the Members of the Class.

## EIGHTH CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

90.    Plaintiff hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

91.    As set forth in the Sixth Cause of Action, Plaintiff submits personal information to Apple and Apple promises in its Privacy Policy that it will not share this information with third-party advertisers or applications developers without Plaintiff's consent, and the consent of each Class member, respectively.

92.    A covenant of good faith and fair dealing, which imposes upon each party to a contract a duty of good faith and fair dealing in its performance, is implied in every contract, including the Agreement that embodies the relationship between Apple and its users.

93.    Good faith and fair dealing is an element imposed by common law or statute as an element of every contract under the laws of every state.  Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to violate the spirit of the bargain and not to intentionally do anything to injure the other party's right to receive the benefits of the contract.

94.    Plaintiff reasonably relied upon Apple to act in good faith both with regard to the contract and in the methods and manner in which it carries out the contract terms.  Bad faith can violate the spirit of the Agreement and may be overt or may consist of inaction.  Apple's inaction in failing to adequately notify Plaintiff of the release of personal information to outside advertisers and application developers evidences bad faith and ill motive.

95.    The contract is a form contract, the terms of which Plaintiff is deemed to have accepted once Plaintiff and the Class signed up with Apple.  The contract purports to give

1  discretion to Apple relating to Apple's protection of users' privacy.  Apple is subject to an

2  obligation to exercise that discretion in good faith.  The covenant of good faith and fair dealing is

3  breached when a party to a contract uses discretion conferred by the contract to act dishonestly or

4  to act outside of accepted commercial practices.  Apple breached its implied covenant of good

5  faith and fair dealing by exercising bad faith in using its discretionary rights to deliberately,

6  routinely, and systematically make Plaintiff's personal information available to third parties.

7      96.    Plaintiff has performed all, or substantially all, of the obligations imposed on him

8  under the contract, whereas Apple has acted in a manner as to evade the spirit of the contract, in

9  particular by deliberately, routinely, and systematically without notifying Plaintiff of its

10  disclosure of his personal information to third-party advertisers.  Such actions represent a

11  fundamental wrong that is clearly beyond the reasonable expectations of the parties.  Apple's

12  disclosure of such information to third party advertisers and tracking companies is not in

13  accordance with the reasonable expectations of the parties and evidences a dishonest purpose.

14      97.    Apple's ill motive is further evidenced by its failure to obtain Plaintiff's consent

15  in its data mining efforts while at the same time consciously and deliberately utilizing data

16  mining to automatically and without notice providing user information to third-party advertisers

17  and Internet tracking companies.  Apple profits from advertising revenues derived from its data

18  mining efforts from Plaintiff and the Class.

19      98.    The obligation imposed by the implied covenant of good faith and fair dealing is

20  an obligation to refrain from opportunistic behavior.  Apple has breached the implied covenant

21  of good faith and fair dealing in the Agreement through its policies and practices as alleged

22  herein.  Plaintiff and the Class have sustained damages and seek a determination that the policies

23  and procedures of Apple are not consonant with Apple's implied duties of good faith and fair

24  dealing.

25              **NINTH CAUSE OF ACTION**
26              **(Common Law Invasion Of Privacy)**

27      99.    Plaintiff hereby incorporates by reference the allegations contained in all of the

28  preceding paragraphs of this complaint.

CLASS ACTION COMPLAINT                    - 21 -

100.     Plaintiff had a legally protected informational privacy interest in the confidential and sensitive information that Defendants obtained from him and unlawfully disseminated.

101.     Plaintiff had a legally protected autonomy privacy interest in making intimate personal decisions regarding their use of their mobile devices without observation, intrusion or interference.

102.     Plaintiff reasonably expected that his confidential and sensitive information and intimate personal decisions would be kept private.

103.     Defendants intentionally committed a "serious invasion of privacy" that would be highly offensive to a reasonable person by making public Plaintiff's personally identifying information in conjunction with his UDID and data tracking cookies.

104.     As a consequence, Plaintiff was personally injured and suffered emotional distress damages.

### TENTH CAUSE OF ACTION
### (Article I, Section 1 of the California Constitution)

105.     Plaintiff hereby incorporates by reference the allegations contained in all of the preceding paragraphs of this complaint.

106.     The California Constitution expressly grants California residents an inalienable right to privacy.

107.     Plaintiff had a legally protected informational privacy interest in the confidential and sensitive information that Defendants obtained from him and unlawfully disseminated.

108.     Plaintiff had a legally protected autonomy privacy interest in making intimate personal decisions regarding their use of the Internet without observation, intrusion or interference.

109.     Plaintiff reasonably expected that his confidential and sensitive information and intimate personal decisions would be kept private.

110.     Defendants committed a "serious invasion of privacy" by revealing Plaintiff's PII in conjunction with data tracking cookies.

111.     Plaintiff was damaged thereby.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Anthony Chiu, on behalf of himself and the Class, requests the following relief:

A.     An order certifying that this action is properly brought and may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiff be appointed as Class Representative, and that Plaintiff's counsel be appointed Class Counsel;

B.     An award of damages, except as to the CLRA claim as alleged above in paragraphs 75-84;

C.     Restitution of all monies unjustly obtained or to be obtained from Plaintiff and members of the Class;

D.     Declaratory and injunctive relief;

E.     An award of reasonable attorneys' fees and costs; and

F.     Such other relief at law or equity as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of his claims by jury to the extent authorized by law.

DATED: January 27, 2011                  **MILBERG LLP**
                                         JEFF S. WESTERMAN
                                         SABRINA S. KIM

                                         _____
                                                  JEFF S. WESTERMAN

                                         One California Plaza
                                         300 S. Grand Avenue, Suite 3900
                                         Los Angeles, CA  90071
                                         Telephone:     (213) 617-1200
                                         Facsimile:     (213) 617-1975
                                         E-mail: jwesterman@milberg.com
                                          skim@milberg.com

                                         *Attorneys for Plaintiff*

CLASS ACTION COMPLAINT                         - 23 -

**MILBERG LLP**
SANFORD P. DUMAIN
PETER E. SEIDMAN
ANDREI V. RADO
ANNE MARIE VU (SBN 238771)
One Pennsylvania Plaza, 49th Floor
New York, NY  10119
Telephone:      (212) 594-5300
Facsimile:      (212) 868-1229
E-mail: sdumain@milberg.com
  pseidman@milberg.com
  arado@milberg.com
  avu@milberg.com

*Attorneys for Plaintiff*

**REESE RICHMAN LLP**
MICHAEL R. REESE (SBN 206773)
KIM RICHMAN
875 Avenue of the Americas, 18th Floor
New York, NY  10001
Telephone:      (212) 579-4625
Facsimile:      (212) 253-4272
E-mail: mreese@reeserichman.com
  krichman@reeserichman.com

*Attorneys for Plaintiff*